In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00081-CV**

**IN THE INTEREST OF J.D.**

**On Appeal from the County Court at Law**
**Orange County, Texas**
**Trial Cause No. C190849-D**

## MEMORANDUM OPINION

Before terminating the relationship between a parent and the parent's child, the trial court, when acting as the factfinder, must make two discrete findings supported by "clear and convincing evidence."[1] The first of these requires the trial court to find the parent engaged in conduct that violated at least one of the twenty-one grounds in subsections 161.001(b)(1)(A)-(U) of the Texas Family Code.[2] Subsection (Q), which is one of these twenty-one grounds, provides for terminating

---

[1]Tex. Fam. Code Ann. § 161.001(b).
[2]*Id.*

1

the parent's relationship if there is clear and convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition[.]"[3] The second discrete finding needed to terminate the relationship requires the factfinder to find that terminating the relationship is in the child's best interest.[4]

Following at bench trial, the trial court terminated the parental rights of *James*'s parents and found that terminating their relationship with him is in James's best interest.[5] The judgment reflects the trial court terminated James's father's (Father's) relationship after finding Father knowingly engaged in criminal conduct that led to his confinement and inability to care for James in the two-year period in subsection (Q).[6] Second, the trial court found that terminating Father's relationship with James is in James's best interest.[7] And the trial court's order also terminates Mother's parental rights to James. After the trial court signed the order terminating Mother's and Father's parental rights to James, Father exercised his right to appeal. Mother, however, did not.

---

[3]*See id*. § 161.001(b)(1)(Q).
[4]*Id*. § 161.001(b)(2).
[5]To protect James's identity, we use pseudonyms for his name and any of his relatives. Tex. R. App. P. 9.8(a), (b).
[6]Tex. Fam. Code Ann. § 161.001(b)(1)(Q)
[7]*Id*. § 161.001(b)(2).

Father raises three issues for our review in the appeal. The first two of Father's issues argue the evidence is legally and factually insufficient to support the trial court's subsection (Q) and best-interest findings. In Father's third issue, he complains about the terms in a mediated settlement agreement, an agreement Father never signed, where Mother and the Department agreed that she should be allowed to retain certain of her possessory rights to James. In that agreement, Mother and the Department agreed they would recommend the Department be named as James's sole managing conservator, leaving her as a possessory conservator with certain limited rights and duties the agreement defined, rights that expired in 2024.

For the reasons explained below, we conclude that Father's arguments supporting his issues lack merit. As to issues one and two, there is ample evidence in the record to support the trial court's findings relevant to the grounds the court relied on to terminate Father's rights. Turning to issue three, the record does not support Father's claim that the trial court relied on the settlement agreement when it decided to terminate Father's rights to James.

Background

In October 2019, the Department took James from an apartment after police found him there alone and without adult supervision. The next day, the trial court signed an emergency order authorizing the Department to take James into custody. In the hearing on the Department's petition, the trial court found "there is an

immediate danger to [James's] physical health or safety . . . and that [leaving him] in the home would be contrary to [his] welfare[.]" In the emergency order, the trial court named the Department as James's temporary sole managing conservator.

The Department's claims include a claim alleging that the parent-child relationships between James and his parents should be terminated. In the investigation of James's case, the caseworker assigned to his case learned that Father could not care for James because he had been arrested, jailed, and charged with burglarizing a habitation and engaging in organized criminal activity.

Seven witnesses, including Father, testified in the trial that ended with the final order at issue in the appeal. When the removal occurred, Father was in jail and awaiting trial. Even so, the Department's initial goal was to reunite James and his parents after both completed the requirements in their court-ordered service plans. At trial, however, the Department proved that James's parents failed to successfully complete those requirements. The evidence also shows that, in January 2020, Father was convicted of burglarizing a habitation and engaging in organized criminal activity. Father received six-year sentences on his convictions, convictions Father was ordered to serve concurrently. When the Department's case went to trial, Father was still in prison. The caseworker and Father both testified that Father would complete the sentences on the convictions in July 2025. Even though his projected date to complete his sentences is in 2025, Father testified that he hopes to get out of

prison earlier on parole. He explained he thinks he will be granted parole when he becomes eligible in July 2022.

At the conclusion of the trial, the trial court found Father knowingly engaged in criminal conduct that led to his criminal conviction, imprisonment, and inability to care for James for at least two years from the date the Department sued Mother and Father to terminate their relationships with James.[8] The trial court also found that terminating Father's rights to James is in James's best interest.[9]

Following the trial and before the trial court signed the final order, Mother changed her mind about relying on her settlement agreement with the Department, an agreement under which the Department agreed to recommend that she be allowed to retain certain possessory rights for a limited period of time to James. Instead, after the parties rested in the suit, Mother signed an affidavit relinquishing her parental rights to James to the Department. According to Mother's affidavit of relinquishment, Mother "freely, voluntarily, and permanently give[s] and relinquish[es] to the Department" her rights to James.[10] After Mother filed the

---

[8]*See id.* § 161.001(b)(1)(Q).

[9]*Id.* § 161.001(b)(2).

[10]As to Mother, the judgment the trial court signed relies on the affidavit of relinquishment Mother signed about a week after the parties completed presenting evidence in the trial where the Department asked the trial court to terminate Mother's and Father's rights. *See id.* § 161.001(b)(1)(K), (b)(2).

affidavit with the County Clerk, the trial court rendered the final order at issue in the appeal and terminated Father's and Mother's parent-child relationship with James.

Standard of Review

In Father's first two issues, he argues the evidence is legally and factually insufficient to support the trial court's rulings terminating his rights to James. At trial, the Department had the burden to prove through clear and convincing evidence that Father's relationship with James should be terminated.[11] *Clear and convincing* evidence is statutorily defined: it means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[12]

When reviewing for legal insufficiency, we review all the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[13] We assume the factfinder resolved the disputed facts in a manner that favors the finding it made if a reasonable factfinder could have resolved the issue that way.[14] For that reason, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.[15] If we conclude that no reasonable factfinder could

---

[11]*Id.*
[12]*Id.* § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).
[13]*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).
[14]*Id.*
[15]*Id.*

form a firm belief or conviction that the fact in dispute is true, we must find the evidence legally insufficient.[16]

On the other hand, when reviewing for factual insufficiency, we determine whether the Department introduced sufficient evidence to allow the factfinder to form a firm belief or conviction about the truth of the claim at issue.[17] In our review, we focus on the evidence in the trial that the factfinder could have found to be clear and convincing to prove a fact at issue in the dispute.[18] We are to avoid substituting our judgment for the one the factfinder made during the trial.[19] Still, if the evidence when viewed as a whole reveals that the disputed evidence is such that no reasonable factfinder could form a firm belief or conviction about the truth of the fact the Department needed to prove to prevail, the reviewing court will find the evidence factually insufficient to support the trial court's final order.[20]

### Did the conviction and imprisonment result in Father's inability to care for James?

In issue one, Father argues the evidence is insufficient to support the trial court's ruling terminating his rights to James. Here, the order terminating Father's rights to James relies on just one of the twenty-one grounds listed in the Family Code

---

[16]*See In re J.L.*, 163 S.W.3d at 85.
[17]*In re J.F.C.*, 96 S.W.3d at 266.
[18]*Id.*
[19]*See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).
[20]*In re J.F.C.*, 96 S.W.3d at 267.

that authorize a factfinder, on appropriate findings, to terminate the relationship between a parent and a child.[21] That provision–call it the inability-due-to-confinement provision—allows the factfinder to terminate the parent-child relationship if the Department proves by clear and convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition."[22]

In Father's appeal, Father contests just one of the discrete findings the trial court made when it found he violated the inability-due-to-confinement provision of the Family Code. According to Father, the Department failed to present clear and convincing evidence to prove that his imprisonment left him without the ability to care for James. To support Father's argument, Father points to the evidence showing that he and his sister testified that Father's sister agreed to take care of James until such time as Father was released on parole or completed his sentence. While Father acknowledges the evidence proves he incurred a conviction that resulted in his imprisonment for the two-year period relevant to the inability-due-to-confinement provision of the statute, Father suggests the Department's evidence is insufficient to allow the trial court to form a firm belief or conviction that he failed to make

---

[21]Tex. Fam. Code. Ann. § 161.001(b)(1).
[22]*Id*. § 161.001(b)(1)(Q).

arrangements that were adequate to provide for James's care while he was in prison.[23]

Even so, the testimony supporting Father's claim that his sister had the resources to take care of James in his absence was contested by the Department in the trial. The record shows the Department called witnesses who addressed Father's plans for James. The caseworker, for instance, testified that Father's plan to allow his siter to care for James was inadequate. As to Father's sister, the testimony reflects that she was unemployed when the Department removed James from his mother's care and unemployed at the time of the trial. Father's sister also failed to present evidence showing she has the financial resources to take up Father's duties in caring for James. James's paternal grandfather did not testify in the trial.

Father also suggests the evidence shows his grandfather could help care for James. But witnesses called by the Department testified the grandfather is not an adequate option due to his health and advanced age. There is also no other testimony before us that contradicts the Department's evidence that casts doubt on Father suggesting that his grandfather could adequately care for James until Father is released. Finally, there is no evidence in the record to show that Father's family

---

[23]*See In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating the requirements of subsection (Q) are "not met by showing incarceration alone").

members contributed money toward James's care after the Department removed James from his home.

Considered as a whole, the evidence reveals that a disputed issue of material fact exists about the adequacy (or inadequacy) of Father's plans for James. In an appeal from an order terminating a parent's rights, we assume the trial court resolved the facts in dispute about whether Father's plan was adequate in the Department's favor.[24] Because the record contains evidence that allowed the trial court to resolve the dispute in favor of the ruling the trial court made terminating Father's rights to James, his legal sufficiency argument lacks merit and is overruled.

For similar reasons, Father's factual sufficiency argument also lacks merit. In factual sufficiency review, we weigh the "disputed evidence contrary to the finding against all the evidence favoring the finding."[25] But here, the evidence Father presented about whether his plans for James were adequate is not overwhelming.[26] The trial court could have concluded that Father's sister did not have the financial resources to adequately care for James because she did not have income from a job and did not prove that her income exceeded the expenses she incurred in operating her home. While we acknowledge the testimony shows Father's sister receives unemployment benefits, nothing shows how much she received or that the income

---

[24]*See In the Interest of A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).
[25]*Id.* at 631.
[26]*Id.*

10

she had from those benefits exceeded her expenses. There is also no evidence that addressed whether Father's sister has assets or income available from some other source. Even though Father's sister testified she thought she could get a job if she tried, the trial court, in trying the facts, was not required to believe her or to believe that she would have done so to care for James. And to the sister's expenses, the evidence shows she already has one dependent, a child. Without concrete evidence to show that the sister had the financial resources to provide a home for an additional child, there is not enough evidence in the record to show the trial court's finding is inconsistent with the trial court's conclusion that Father's plan lacked sufficient detail to provide a reasonable alternative that would allow the sister to provide James with the food, shelter, and clothing he would need.

The testimony about Father's suggestion that his father, James's paternal grandfather, could help care for James is also weak. For example, nothing in the record shows that the grandfather has the financial ability to care for James. The record also shows that James's paternal grandfather is elderly, over eighty, and suffers from a health condition that the trial court could reasonably infer would interfere with the grandfather's ability to provide James with care over a period that would not end until Father got out of prison.

To sum up: on this record, the trial court had the right to credit the testimony of the witnesses presented by the Department and to reject the testimony Father

presented about the alternative arrangements that Father proposed for James's care.[27]

For that reason, Father's first issue is overruled.

**Is the evidence legally and factually sufficient
to support the trial court's best-interest finding?**

In issue two, Father argues the Department failed to prove that terminating his

rights to James is in James's best interest. The Family Code creates a presumption

that keeping a child with the child's parent is in the child's best interest.[28] Yet the

Family Code also provides that "the prompt and permanent placement of the child

in a safe environment is . . . in the child's best interest."[29] As here, these

presumptions influence a court in different directions about the ruling appropriate in

a given case. And when appellate courts review a trial court's best-interest finding,

we look to the non-exclusive factors the Texas Supreme Court identified in *Holley*

*v. Adams* when reviewing that part of the ruling.[30]

---

[27]*See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (explaining that the factfinder "may believe one witness and disbelieve others").

[28]Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with its parent).

[29]Tex. Fam. Code Ann. § 263.307(a).

[30]In *Holley v. Adams*, the Texas Supreme Court applied these factors when reviewing a best-interest finding:
- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the party seeking custody;
- the plans for the child by the parties seeking custody;

Father questions whether the trial court had sufficient evidence to overcome the presumption in the Family Code that favors keeping a child with the child's parent. The answer is that it does. In March 2021 when the case went to trial, James was nearly two-years old. Yet, during the two-year period following James's birth, nothing in the record shows Father developed a relationship with James or that they have a bond. Instead, the evidence shows that Father was arrested and jailed about a month after James was born. The evidence shows that he remained in jail while awaiting trial on the two felonies that led to his convictions for those offenses in January 2020. Unless Father is successful in getting out of prison early on parole, Father will not complete his sentences until July 2025. So even though there is evidence, Father's testimony, that he might be released from prison in 2022, the trial court had the right to form a firm belief or conviction that Father has no bond with James. And there is no evidence showing that Father, after he was jailed, provided James with any financial, physical, or emotional support.[31]

---

• the stability of the home or the proposed placement;
• the parent's acts or omissions that reveal the existing parent-child relationship is improper; and
• any excuse for the parent's acts or omission.
*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code. Ann. § 263.307(b).

[31]*See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Simply put, the trial court did not have to sacrifice James's emotional and physical well-being to preserve a bond that the evidence does not show exists. Here, the evidence shows Father's obligations to James have gone unfulfilled for years.[32]

On the other hand, James's foster parents testified they would like to adopt James. The record also contains opinions from the Department's caseworker, James's foster parents, and James's guardian ad litem that terminating Father's rights to James is in James's best interest. We conclude the record contains legally and factually sufficient evidence to support the trial court's best-interest finding.[33] Given that conclusion, Father's second issue is overruled.

### Did the trial court err by approving the mediated settlement agreement between the Department and James's mother?

Last, Father argues the trial court erred by approving a mediated settlement agreement that James's mother and the Department reached before the trial. According to Father, the agreement is unenforceable because he did not sign the agreement or participate in the mediation that led to the agreement that James's mother signed. Father concludes the agreement is unenforceable because he did not sign it.[34]

---

[32]*See In re J.F.-G.*, No. 20-0378, 2021 Tex. LEXIS 413, at *20 (Tex. May 21, 2021).

[33]*See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *see also In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.

[34]*See* Tex. Fam. Code Ann. § 153.0071(d).

14

Father's argument misses the mark. We know the trial court did not rely on the mediated agreement in signing the final order at issue in Father's appeal. The final order shows the trial court appointed the Department to be James's managing conservator, not James's foster parents, which is what Mother agreed to in the document she signed prior to trial. So the trial court's appointment of the Department deviates from that term of the mediated agreement. And there's more. In the final order, the trial court terminated Mother's rights to James. That means the final order does not give Mother rights to James as a possessory conservator, so again the order deviates from the terms of the written agreement. And finally, the final order terminating the rights of James's parents to him provides: "[A]ll relief requested in this case and not expressly granted is denied."[35] To put it in legal terms, Father's complaint about the settlement agreement concerns an interlocutory ruling that did not survive the order at issue in the appeal.

Because the interlocutory ruling was not incorporated in the final order, Father's third issue is overruled.

---

[35]*See Lehmann v. Har-Con Corp*., 39 S.W.3d 191, 200 (Tex. 2001) ("A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language.").

Conclusion

Because Father's issues lack merit, the trial court's judgment is

AFFIRMED.

                              _____

                                  HOLLIS HORTON
                                     Justice

Submitted on June 24, 2021
Opinion Delivered September 23, 2021

Before Kreger, Horton and Johnson, JJ.